SHAVER *v.* LITCHFIELD CLOTHING COMPANY.

Opinion delivered April 4, 1932.

*C. O. Raley* and *Walter L. Pope,* for appellant.

*Ward & Ward,* for appellee.

BUTLER, J. The Litchfield Clothing Company, appellee, brought suit against John B. Shaver, appellant, under his trade name of Shaver Mercantile Company, for the amount due on a bill of merchandise, and from a judgment in favor of appellee Shaver has appealed.

The facts, as stipulated in the court below, are as follows: "That the defendant being justly indebted to the said plaintiff in the sum of $239.19 for goods sold and delivered to him by the plaintiff issued and delivered to the plaintiff his check in payment of said debt drawn on the Randolph State Bank of Pocahontas, Arkansas, for said sum and forwarded said check to the plaintiff at Litchfield, Kentucky; that said check was postdated for September 1, 1930, and was sent to the plaintiff; that the plaintiff immediately delivered said check to its attorneys, Forgey & Verdier, of St. Louis, Missouri, who had this claim for collection at the time, and that on the 30th day of August, 1930, said attorneys, Forgey &

Verdier, sent said check by United States mail to the Randolph State Bank for payment by proper exchange if said bank had funds to pay the same, and if not payable that said check be returned to them immediately. That said check was received by the said Randolph State Bank, but the bank did not cash it and did not return it as directed; that on September 23, 1930, plaintiff's attorneys wired the defendant herein that he would have to take up said check as the bank had not remitted. That on the 23rd day of September, 1930, plaintiff's attorney wrote the Randolph State Bank asking for returns on said check and followed soon after with a wire threatening to take the matter up with the State Bank Examiner if it was not paid or returned to them; that, in answer to this, the Randolph State Bank replied that they did not have said check and knew nothing of it; that said attorneys for the plaintiff thereupon wrote the defendant advising him that the bank could not locate the check.

"A copy of the letter forwarding said check to the Randolph State Bank, and a copy of the letter of the Deputy Bank Commissioner notifying Forgey & Verdier that said check was in the files of the Randolph State Bank are attached herewith as Exhibits A and B. It is further stipulated that at all times from August 30, 1930, to November 5, 1930, the date the Randolph State Bank closed, Shaver Mercantile Company, the drawer of said check, had sufficient funds in the Randolph State Bank to pay the same; that neither the payee of said check nor its agents, Forgey & Verdier, ever requested that said check be protested for nonpayment and took no action against said bank to compel the payment of said check.

"That the Randolph State Bank became insolvent and was taken over by the State Bank Commissioner on the 5th day of November, 1930, and has been liquidated by said commissioner. That the check of the defendant was found in the files of said bank after it was taken over by said commissioner and now appears therein, but

was not paid, and still remains unpaid. That the plaintiff has not received payment for said debt in any other way than by said check above mentioned, and it is further agreed that said check has not been honored by said Randolph State Bank and remains unpaid in so far as this plaintiff's account is concerned against the defendant herein.''

In 5 R. C. L. at page 514 is the following declaration: ''According to the prevailing view, it is negligence in the holder of a check to send it direct to the drawee residing in a distant place for payment; and the holder is responsible for any loss occasioned by adopting such a course.''

In the case of *Anderson* v. *Rodgers,* 53 Kan. 542, 27 L. R. A. 248, where a check was mailed directly to the drawee bank on the 12th day of December and which remained open for business on the 13th and closed on the 14th, and where on the 13th the bank returned the check to the sender with a notation of ''no funds,'' but where it was admitted that the drawer had more than enough funds in the bank to his credit to pay the check, the court, in reversing the judgment of the lower court against the drawer, said:

''The Hamilton County Bank, therefore, selected the drawee of the check as its agent for collection. That this was negligence is well settled by the authorities. It is said in Daniel on Negotiable Instruments (Vol. 1, § 328a): 'For the purposes of collection, the collecting bank must employ a suitable subagent. It must not transmit its checks or bills directly to the bank or party by whom payment is to be made, with the request that remittances be made therefor. It is considered that no firm, bank, corporation, or individual can be deemed a suitable agent, in contemplation of law, to enforce in behalf of another a claim against itself.' This proposition is sustained by abundant authorities. *Drovers' Nat. Bank* v. *Anglo-American Packing & Provision Co.,* 117 Ill. 100, 7 N. E. 601, 57 Am. Rep. 855; *German Nat.*

*Bank of Denver* v. *Burns,* 12 Colo. 539, 21 Pac. 714; *Merchants' Nat. Bank of Philadelphia* v. *Goodman,* 109 Pa. 422, 2 Atl. 687, 58 Am. Rep. 728; *First Nat. Bank of Evansville* v. *Fourth Nat. Bank of Louisville,* 6 C. C. A. 183, 56 Fed. Rep. 967; *Farwell* v. *Curtis,* 7 Biss. 160, Fed. Cas. No. 4, 690.

"It is insisted that inasmuch as the check was forwarded in due time, and came into the hands of the drawee, which refused payment, and returned the check with the statement: " 'No funds in bank,' the defendant was not injured by the mode of presentment; that an answer of 'No funds' sent by mail is as effectual as refusal to pay as though made across the counter at the bank. Where due presentment is not made, the burden of proof is upon the holder of the check to show that the drawer has not suffered injury. *Little* v. *Phoenix Bank,* 2 Hill 425; *Ford* v. *McClung,* 5 W. Va. 166; 2 Parsons, Bills & Notes, 71; 2 Dan. Neg. Inst. § 1588; *Daniels* v. *Kyle,* 1 Ga. 304."

In closing the opinion, the court in that case said:

"The request in this case by letter was not an ordinary demand of payment, calling for current funds, but was a request for Kansas City Exchange, which the drawee would of course be at perfect liberty to refuse. In cases of this kind a hardship necessarily results to one party or another. Courts, in their decisions, must be guided by fixed rules. The plaintiff, having trusted in the good faith of the Ritchfield Bank by sending the check to it, must bear the burden of the loss occasioned by its failure occurring after the day on which regular presentment should have been made."

It is the opinion of the majority that an application of these principles to the facts exonerates the appellant from the payment of the debt, and that the trial court erred in holding otherwise. The judgment will therefore be reversed, and the cause remanded with directions to enter judgment for the appellant.

The writer and Mr. Justice SMITH do not agree with the opinion reached by the majority.